NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
            v.                                :     06-cr-286 (JAP)
                                              :
BO ZHOU,                                      :
                                              :     **OPINION**
            Defendant.                        :
_____:

APPEARANCES:

R. Joseph Gribko, Esq.
John Jay Hoffman, Esq.
Assistant United States Attorneys
Christopher J. Christie, Esq.
United States Attorney
970 Broad Street
Newark, New Jersey 07102
        *Attorneys for the United States of America*

Joel Winograd, Esq.
Winograd & Winograd, Esqs.
450 Seventh Avenue, 13th Floor
New York, New York 10123
        *Attorney for Defendant*

PISANO, District Judge.

        Presently before the Court is a motion by the United States of America ("the

Government") to exclude from trial the testimony of an expert witness proffered by Defendant

Bo Zhou ("Defendant").  The Government argues that the expert, Paul V. Fleury ("Fleury"), is

not qualified as an expert and that his report is not sufficiently reliable or fit as required by

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993).  In addition, the Government contends that Fleury's purported testimony would be unduly prejudicial and, thus, the Court should preclude the testimony pursuant to Federal Rule of Evidence 403.  Defendant did not file an opposition to the motion.  For the reasons set forth herein, the Court agrees with the Government, and grants the motion to exclude from trial Fleury's testimony and report.

I.      BACKGROUND

        A.      Procedural History

        On February 15, 2005, Defendant's 2001 Sealine model T51 motor vessel, called "the Visioneer," ("the vessel" or "the Visioneer") was damaged by fire.  On April 7, 2006, a grand jury returned an indictment against Defendant, charging him with maliciously damaging and destroying, and attempting to damage and destroy, "by means of fire and an explosive, property, namely a 2001 Sealine model T51 motor vessel," in violation of 18 U.S.C. §§ 844(i) and 2.  The trial was originally scheduled to begin on May 28, 2008.  However, upon joint request by the parties, the Court adjourned the trial until September 15, 2008 in order for the parties to seek and retain experts to testify as to the issues presented in this case.

        Defendant retained as an expert Fleury, a consultant affiliated with Marine Services, a company specializing in electrical and corrosion control of maritime vessels.  Accordingly, Fleury issued a report, detailing his findings, on May 8, 2008.  In a letter dated July 14, 2008 from the Government to Defendant's counsel, the Government expressed that, in May of 2008, it had requested an edited report from Fleury, which had not been forthcoming.  On August 1, 2008, the Government filed the present motion to exclude Fleury.

        B.      Fleury's Report

Fleury holds Associate in Applied Sciences Degrees in the fields of Law Enforcement and Industrial Management.  Fleury is also certified as a: (1) Corrosion Technologist, issued by NACE International (formerly, "The National Association of Corrosion Engineers"); (2) Fire and Explosion Investigator ("CFEI"), issued by the National Association of Fire Investigators ("NAFI"); (3) Electrical and Corrosion Technician, issued by the American Boat & Yacht Council ("ABYC"); and (4) Boating Accident Investigator, issued by the National Association of State Boating Law Administrators ("NASBLA").  In addition, Fleury is affiliated with numerous professional organizations, such as NAFI, the National Association of Marine Investigators ("NAMI"), and the International Association of Arson Investigators ("IAAI").

In his May 8, 2008 report, Fleury concludes that arson did not cause the fire aboard the vessel.  (Fleury, Report of Investigation of Fire on M.V. Visioneer, May 8, 2008, ("R.") 27).  Rather, Fleury found the fire to be accidental.  (R. 27).  Fleury states that, to reach this conclusion, he conducted a "921 Fire Inspection" in accordance with the National Fire Protection Association's ("NFPA") publication *NFPA 921:  A Guide for Fire and Explosion Investigations*.[1] (R. 3).  He reports that his investigation included two examinations of the vessel: the first occurring on June 10, 2007 and the second occurring on March 10, 2008.  (R. 6).  Fleury further expresses that he examined the documents provided by the Government, which included reports and findings from the investigations conducted by the Jersey City Fire Department Arson Unit

---

[1]  *See Thompson v. State Farm Fire and Cas. Co.*, 548 F. Supp. 2d 588, 592 (W.D. Tenn. 2008) ("The purpose of NFPA 921 'is to establish guidelines and recommendations for the safe and systematic investigation or analysis of fire and explosion incidents . . . .'" (quoting *NFPA 921*, ch. 1.2 (2001 ed.))); *Chester Valley Coach Works, Inc. v. Fisher-Price, Inc.*, 2001 WL 1160012, *3 (E.D. Pa. Aug. 29, 2001) ("NFPA 921 is a guide to fire investigations developed by the [NFPA] to 'assist in improving the fire investigation process and the quality of information on fires resulting from the investigative process.'" (quoting *NFPA 921* (1998 ed.))).

("JCFDAU") and the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF").  (R. 6).
However, Fleury does not detail in his report the precise methodology employed in his
examinations of the Visioneer.

In the report's section entitled "Findings," Fleury lists deficiencies he found in the
documentation received from the JCFDAU and ATF investigations.  (R. 6).  He notes that: (1)
certain photographs provided to him were duplicate, (2) the JCFDAU did not "properly collect
evidence at the time of their investigation" or "properly record[]" the scene, and (3) "[n]ot one
single Fire Investigator, involved in this case, had any experience investigating boat fires, nor do
they have boating experience."  (R. 6-7).  Fleury also reiterates the findings reached by the
JCFDAU and ATF in their investigations and statements made by marina personnel and
Defendant.  (R. 7-12).  He further states that neither the JCFDAU nor the ATF conducted "a
proper NFPA 921 Fire Investigation."  (R. 12).

Fleury's report also includes a section entitled "Analysis."  (R. 16).  Fleury begins that
section by stating:

> After conducting as complete an investigation as possible, two years after the fire,
> one fact becomes very clear.
> These fire investigations by the [JCFDAU] and [t]he [ATF], is without a doubt the
> lowest quality Fire Investigation that I have ever been involved in.
> This so called investigation is the most egregious breach of trust and
> confidence in the public fire service that I have encountered.  The investigations by
> these two organizations does not begin to conform to the [NFPA] 921 . . . .  From the
> outset, it would appear that JCFDAU Investigator Legregin was in charge of the Fire
> Ivestigation.  Mr. Legregin failed miserably to carry out his sworn duty to properly
> investigate this fire.  Mr. Legregin failed to collect the important evidence that was
> readily available.

(R. 16).  Fleury then lists "[e]vidence not recovered[,]" (R. 16), and the purported focuses of the
JCFDAU investigation, (R. 17).  He also opines that "[p]art of the problem in this case stems

-4-

from the fact that not one fire investigator has boating experience nor [b]oat [f]ire [i]nvestigation [e]xperience." (R. 17). After discussing the JCFDAU's inclusion in its report of a comment made by a marine surveyor that an "explosion" occurred on the boat, Fleury reports: "[a]ll the statements of this type simply help the investigator paint a guilty picture of an innocent man. When you see enough of the irresponsible comments, as we have in Mr. Legregin's reports, people associated with the case tend to believe those statements because investigator Legregin reported them." (R. 18).

In his analysis, Fleury further discusses his assessment of the "evidence" found on Defendant's vessel, such as a heater, the electrical system, a brush, a water bottle, and chemicals found on wood samples taken from the vessel. (R. 18-26). He expresses that "the heater was the source of heat that started the fire[.]" (R. 19). Fleury explains that Defendant kept many loose items in his vessel and that those items were shifted either due to "the wave action in the Morris Canal" or by Defendant, "accidentally knock[ing]" clothing onto or near the heater. (R. 19-20).

Fleury also states that the JCFDAU and ATF investigators did not examine or test the Visioneer's main electrical distribution panel, misidentified a "grilling brush" as a "paint brush," (R. 21), failed to take "control samples" of the wood in the vessel, (R. 22), and failed to account for the manner in which acetone and alcohol burn in making their conclusions, (R. 23). Finally, Fleury proffered that the JCFDAU and ATF placed too much emphasis on the existence of a plastic water bottle on the vessel and did not properly document its location or contents. (R. 24). Disagreeing with the conclusion reached by the JCFDAU investigator, Fleury expresses his belief that the water bottle could not have withstood the fire and that it is more likely that the bottle fell close to the heater when the firemen extinguished the fire on the vessel. (R. 25).

-5-

Fleury concludes his report with a list of ten statements.  First, Fleury states that the fire was accidental and that the "point of origin was the potable electric heater in the lower passageway."  (R. 27).  Fleury also concludes that the fire did not involve "flammable liquid pour" or "unsecured flammable liquids or vapors."  (R. 27).  In addition, five of Fleury's ten itemized conclusions relate to the adequacy of the investigations performed by the JCFDAU and ATF; he states that: (1) the JCFDAU did not conduct an investigation in conformity with the NFPA 921 Guide; (2) the ATF did not conduct an investigation in conformity with the NFPA 921 Guide; (3) "[s]poliation of evidence was common place[;]" (4) the "Fire Investigators were ill equipped to investigate a vessel fire[;]" and (5) "Investigators Legregin and Gotthold could not agree on the direction that the heater was facing."  (R. 27).  Finally, Fleury noted in his report that Defendant "voluntarily cooperated 100% with all aspects of this 'Arson' investigation."  (R. 27).

## II.   DISCUSSION

### A.   Standard for Admissibility of Expert Testimony

Federal Rule of Evidence 702 governs the admission of expert testimony.  That Rule provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Two particular requirements apply to the admissibility of scientific expert testimony: (1) it must have sufficient grounds in scientific knowledge, such that the "reasoning or

methodology underlying the testimony is scientifically valid," and (2) the opinion must be helpful to the fact finder. *Daubert*, *supra*, 509 U.S. at 592-93.

Those requirements are met if the proffering party sustains a three-pronged inquiry: (1) the witness is qualified as an expert in a particular field; (2) the methodology applied by the witness is sufficiently reliable; and (3) the witness's testimony "fits" the facts of the case in dispute—that is, the proffered testimony would assist the trier of fact. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741-43 (3d Cir. 1994). Essentially, "an expert must have the requisite 'qualifications, reliability, and fit.'" *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 513 (3d Cir. 2005) (quoting *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 156 (3d Cir. 1999)). The burden of meeting these elements, and of showing that "good grounds" exist for the expert's opinion, lies with the proponent. *U.S. v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004). The burden is met if the proponent establishes that "his expert is qualified and his testimony is admissible by a preponderance of the evidence." *Poust v. Huntleigh Healthcare*, 998 F. Supp. 478, 490 (D.N.J. 1998) (citing *Daubert*, *supra*, 509 U.S. at 593 n.10).

In addition to the Court's gate-keeping function applicable to expert testimony, all evidence is subject to Federal Rule of Evidence 403. *See Daubert*, *supra*, 509 U.S. at 595 (stating that analysis under Rule 702 should also include a consideration of other evidence rules, such as Rule 403). That Rule provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Thereby, a court must balance the effects of the proffered evidence.

**B.     Analysis**

Applying those standards, the Court concludes that Fleury's purported testimony is not admissible.  Initially, the Court finds that, based on the record at this point in time, it cannot say with certainty that Fleury is qualified to testify as an expert in the field of fire investigation.[2]  Although he is a Certified Fire and Explosion Investigator, a review of his resume does not provide the Court with sufficient information as to the extent of his experiences in conducting investigations such as the investigation he purportedly conducted here.  It cannot be said at this juncture that Fleury possesses specialized expertise—that is, "a broad range of knowledge, skills, and training"—in investigating the causation of fires on marine vessels.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Furthermore, the Court finds nothing in Fleury's education or experiences to suggest that he is qualified in the field of fires caused by heaters, or that he is qualified to review investigations performed by others.  *See Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) (finding district court abused discretion by permitting witness to testify as to cause of tractor shovel fire where witness was not an engineer or mechanic and had no experience in determining cause of equipment fires, and stating that, "at a minimum, a proffered witness on causation must possess skill or knowledge greater than the average layman in determining causation").

Nevertheless, even assuming that Fleury is qualified as an expert, the Court finds the methodology applied by Fleury in his report is not sufficiently reliable, and that Fleury's purported testimony would not assist the trier of fact.  Moreover, the probative value of Fleury's

---

[2]  The Court notes, however, that it surmises the proffered use of Fleury's testimony to be in the field of fire investigation.  Absent an expression from Defendant as to his intended use for Fleury's testimony at trial, the Court cannot conduct a thorough qualification analysis.

testimony would be "substantially outweighed by the danger of unfair prejudice, confusion of the

issues, [and] misleading the jury[.]"  Fed. R. Evid. 403.

       **1.**     *Reliability*

       The methodology applied by Fleury in his report is not sufficiently reliable that the

testimony is admissible under the *Daubert* standard.  For testimony to be reliable, "it 'must be

based on the methods and procedures of science rather than on subjective belief or unsupported

speculation; the expert must have good grounds for his o[r] her belief.'"  *Schneider*, *supra*, 320

F.3d at 404 (quoting *In re Paoli R.R. Yard PCB Litig.*, *supra*, 35 F.3d at 742) (internal quotation

marks omitted).  In determining reliability, a multi-factorial analysis ensues; a court should

consider:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has
> been subject to peer review; (3) the known or potential rate of error; (4) the existence
> and maintenance of standards controlling the technique's operation; (5) whether the
> method is generally accepted; (6) the relationship of the technique to methods which
> have been established to be reliable; (7) the qualifications of the expert witness
> testifying based on the methodology; and (8) the non-judicial uses.

*Id.* at 405 (quoting *In re Paoli R.R. Yard PCB Litig.*, *supra*, 35 F.3d at 742 n.8).

       Here, Fleury purports to conduct an investigation in conformity with NFPA 921.  *See*

*supra* at n.1.  Although the methodology set forth in NFPA 921 has been found a reliable

methodology for purposes of Federal Rule of Evidence 702, *see, e.g. Fireman's Fund Ins. Co. v.*

*Canon U.S.A., Inc.*, 394 F.3d 1054, 1057-58 (8th Cir. 2005) ("This guide qualifies as a reliable

method endorsed by a professional organization."), there is nothing in Fleury's report to show

that Fleury's examination followed that methodology.  The only indication that Fleury utilized

the NFPA 921 is in the report's "Introduction," in which Fleury states that he "informed [a

marine surveyor] that [Fleury] would accept the case and conduct a '921' Fire Investigation."  (R.

3).

        It has been established that NFPA 921 "requires that hypotheses of fire origin must be

carefully examined against empirical data obtained from fire scene analysis and appropriate

testing." *Fireman's Fund Ins. Co.*, *supra*, 394 F.3d at 1058.  Here, the report's analysis is devoid

of a consideration of Fleury's hypothesis as applied to empirical data.  The report fails to detail

Fleury's examinations of the vessel and any testings conducted.  Significantly, the report does not

detail the proper methodology required by NFPA 921, but, yet, flatly asserts that the

investigations by the JCFDAU and ATF did not conform to that guide.  Apart from reviewing

and criticizing the investigations of the JCFDAU and ATF, Fleury does not appear to offer his

own independent examination or testing.  Rather, Fleury's report consists mostly of opinions as

to the credibility of the reports drafted from the JCFDAU and ATF investigations, in addition to

a few general observations to support his theory.

        The mere assertion that Fleury applied a methodology in conformance with NFPA 921 is

insufficient to establish that Fleury's report is "based on the methods and procedures of science

rather than on subjective belief or unsupported speculation[.]"  *Schneider*, *supra*, 320 F.3d at 404

(quoting *In re Paoli R.R. Yard PCB Litig.*, *supra*, 35 F.3d at 742) (internal quotation marks

omitted).  *See also Chester Valley Coach Works, Inc.*, *supra*, 2001 WL 1160012, at *8

(excluding proffered expert testimony because "methodologies [expert] used in his fire

investigation deviate[d] frequently and significantly from those required by the Basic

Methodologies chapter of NFPA 921, the authoritative guide for fire investigations[,]" and those

deviations left court "with serious doubts as to the reliability of the methodologies that [expert]

-10-

did follow and the conclusions that he reached").  The Court finds that the methodology applied by Fleury to perform his investigation is not apparent from his report, there is nothing to suggest that he applied the methodology required by NFPA 921, and Fleury's report appears based on subjective belief, rather than scientific methods.  For those reasons, the Court concludes that Fleury's proffered testimony is not sufficiently reliable and must be excluded.

### 2.  *Fitness*

Further, the Court also finds that Fleury's purported testimony would not aid the trier of fact because his report does not "fit" the facts of the case.  *In re Paoli R.R. Yard PCB Litig.*, *supra*, 35 F.3d at 742-43.  Federal Rule of Evidence 702 requires "'a valid *scientific* connection to the pertinent inquiry as a precondition to admissibility.'"  *Id.* at 743 (quoting *Daubert*, *supra*, 509 U.S. at 592).  The indictment filed against Defendant places in dispute the impetus of the fire on the Visioneer.  Fleury's purported testimony does not apply a *scientific* methodology to support a certain causation of that fire.  Rather, according to Fleury's report, Fleury's testimony would focus on the accuracy and motivations of the JCFDAU and ATF in conducting their investigations and reaching their conclusions.  Although the credibility of the investigations by the JCFDAU and ATF may be in dispute at trial, Fleury's conclusions as to those investigations are not based on any reliable methodology.  Accordingly, the Court concludes that Fleury's proffered testimony would not aid the fact-finder and, thereby, must be excluded.

### 3.  *Danger of Unfair Prejudice*

Finally, the Court finds that, if Fleury were to testify in accordance with his report at trial, the probative value of his testimony would be substantially outweighed by unfair prejudice, confusion of the issues, and misleading the jury.  Federal Rule of Evidence 403 permits a court to

preclude relevant evidence where the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Fed. R. Evid. 403. Because "[e]xpert evidence can be both powerful and . . . misleading[,]" a court, "in weighing possible prejudice against probative force under Rule 403[,] . . . exercises more control over experts than over lay witnesses." *Daubert*, *supra*, 509 U.S. at 505 (internal quotation marks and citation omitted).

Initially, the Court finds that, based on the issues regarding Fleury's qualifications, reliability, and fit, Fleury's proffered testimony would have minimal probative value.  Further, the Court finds a significant probability that Fleury, if permitted to testify, would cause unfair prejudice and confuse, and mislead, the fact-finder.  In this instance, Fleury's report is replete with conclusory, and inflammatory, accusations against the JCFDAU and ATF investigators. Significantly, Fleury initiates his "Analysis" section by labeling the investigations of the JCFDAU and ATF as "the most egregious breach of trust and confidence in the public fire service" Fleury has ever encountered.  (R. 16).  Such statements, if presented to a jury, would cause undue prejudice to the Government because Fleury, with the weight of an expert opinion, would encourage the fact-finder to find in Defendant's favor based solely on the allegations of misconduct by the governmental investigative bodies.  Not only would this be unfairly prejudicial, but such assertions "would . . . confuse[] the jury and misplace[] their focus on the minor subsidiary issue whether [the governmental investigations are credible] rather . . . than [on] the major issue[] in the case[,]" that is, the impetus of the fire on the vessel.  *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 799 (3d Cir. 1992).

Comparing the negligible probative value with the possibility of substantial undue

prejudice and confusion, the Court finds that the "probative value [of Fleury's proffered testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403.  The Court, therefore, concludes that Federal Rule of Evidence 403 precludes Defendant from proffering Fleury's testimony at trial.

Finally, although not raised by the Government, the Court underscores the need to prevent further undue delay in commencing the trial in this matter.  The Court originally scheduled the trial to begin on May 28, 2008.  However, upon joint request by counsel, the trial was adjourned for the purpose of permitting counsel to retain expert testimony.  The trial is currently scheduled for September 15, 2008.  Although counsel for the Government initially requested an amended report from Fleury, the Court determines that any amended report, if proffered, and even if able to cure the defects found in this Opinion, would not be admissible under Rule 403 because it would cause undue delay.

## III.    CONCLUSION

For the reasons expressed above, the Court grants the Government's motion to exclude Fleury's testimony.  The Court finds that the methodology applied by Fleury is unreliable and Fleury's opinion is not helpful to the fact-finder.  Moreover, the Court finds that the testimony is precluded under Federal Rule of Evidence 403.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

-13-

Dated: August 25, 2008